IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FABIAN MALDONADO PINEDO,<br><br>Plaintiff,<br><br>vs.<br><br>JON MARTINSON, JR.,[1]<br><br>Defendant. | ORDER<br>AND<br>MEMORANDUM DECISION<br><br>Case No. 2:14-cv-723-TC-DAO |

Defendant Jon Martinson, Jr. (an agent of the U.S. Immigration and Customs Enforcement Agency) has filed a motion to dismiss Plaintiff Fabian Maldonado Pinedo's claims. Mr. Maldonado's claims arise out of his allegation that while he was a fully restrained immigrant detainee under Agent Martinson's care, Agent Martinson physically assaulted him without provocation.

Mr. Maldonado asserts four causes of action: (1) a <u>Bivens</u> claim for damages under the Fifth Amendment; (2) Assault and Battery; (3) Intentional Infliction of Emotional Distress; and (4) Negligent Infliction of Emotional Distress. According to Agent Martinson, he is entitled to dismissal of all four claims.

First, Agent Martinson maintains that the court must dismiss the <u>Bivens</u> Fifth Amendment claim given the United States Supreme Court's 2020 decision in <u>Hernandez v. Mesa</u>

---

[1] In December 2018, the court dismissed the United States of America.

and its 2017 decision in Ziglar v. Abbasi, both of which disapproved of and narrowed Bivens claims. Second, he asserts in the alternative that he is entitled to qualified immunity because the law was not clearly established in 2013 when the relevant events occurred. Third, he contends that the court must dismiss the Assault and Battery claim because Mr. Maldonado agreed in 2015 that he would not bring an assault claim against Agent Martinson and so waived his right to assert that claim in the Second Amended Complaint. Finally, he asks the court to decline to exercise supplemental jurisdiction over remaining state law claims.

For the reasons set forth below, the court holds that circumstances do not justify implying a Bivens cause of action, because Mr. Maldonado has an adequate alternative remedy, namely the state law causes of action. Accordingly, the court dismisses that claim. The court, however, has decided to exercise supplemental jurisdiction over the remaining causes of action. As part of that decision, the court finds that Agent Martinson has no reasonable ground for enforcing Mr. Maldonado's 2015 decision to drop the assault claim. Mr. Maldonado is free to pursue all three of his state law claims in this court.

**Mr. Maldonado's *Bivens* Claim[2]**

In narrow circumstances, a plaintiff who alleges violation of his constitutional rights by a federal employee may bring a private right of action against that individual for monetary damages under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). In Bivens, the United States Supreme Court addressed a claim alleging violation of the plaintiff's Fourth Amendment right to be free from unreasonable searches. Here, Mr. Maldonado alleges that Agent Martinson violated his Fifth Amendment due process right as a

---

[2] For a detailed set of facts, the court refers the reader to the December 2018 order denying Agent Martinson's Westfall Petition seeking immunity under the Federal Tort Claims Act. (See Dec. 4, 2018 Order & Mem. Decision Denying Westfall Pet., ECF No. 104.)

pretrial detainee to be free of excessive force. Agent Martinson claims that recognition of the right Mr. Maldonado asserts would be an impermissible extension of Bivens.

Over the years, the United States Supreme Court has hesitated to expand the right granted by Bivens. In fact, in two of its most recent Bivens-related decisions, the Court cast an even stronger shadow of doubt over what it considers disfavored Bivens actions. See Hernandez v. Mesa, 140 S. Ct. 735 (2020); Ziglar v. Abbasi, 137 S. Ct. 1843 (2017). Still, the Court did not foreclose Bivens actions altogether.

The Court has articulated multiple concerns to address when determining whether the plaintiff's allegations fall within the narrow confines of a Bivens claim.

> In the first place, there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages. But even in the absence of an alternative, a Bivens remedy is a subject of judgment: "the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation."

Wilkie v. Robbins, 551 U.S. 537, 550 (2007) (quoting Bush v. Lucas, 462 U.S. 367, 378 (1983).) Of particular relevance here is whether there exists an adequate alternative remedy to redress the harm Mr. Maldonado alleges. "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new Bivens cause of action." Ziglar, 137 S. Ct. at 1858.

The court finds that Mr. Maldonado has an adequate alternative remedy, namely state law tort claims. Accordingly, the court need not address the other factors used to analyze whether to recognize a plaintiff's Bivens claim.

When Mr. Maldonado brought his suit in 2014, he alleged his Bivens action and a claim for assault and battery against Agent Martinson. He also brought a claim under the Federal Tort

3

Claims Act (FTCA)[3] against Agent Martinson's employer, the United States of America, to recover money damages for Agent Martinson's wrongful conduct. He named the United States because the FTCA allows a plaintiff seeking monetary damages to recover from the government for tortious actions of its employees. See 28 U.S.C. § 1346(b)(1) (providing that the United States may be liable "for money damages … for the injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.").

In 1980, in Carlson v. Green, 446 U.S. 14 (1980), the Court addressed the question of whether to allow a Bivens action even though the plaintiff had an alternative remedy under the FTCA. There, the administratrix for the estate of a federal prisoner alleged that prison officials violated the prisoner's due process, equal protection, and Eighth Amendment rights. She asserted that due to those violations, the prisoner suffered personal injuries from which he died, and she sought compensatory and punitive damages.

The Carlson court allowed the administratrix to pursue a Bivens remedy even though she may have been able to bring a tort cause of action under the FTCA. Recognizing that such an alternative remedy could bar a Bivens claim, the Court reasoned that the FTCA did not provide an adequate alternative remedy in that situation because, among other considerations, a potential FTCA claim against the United States would not deter an individual federal employee. In a later opinion addressing whether a Bivens remedy existed against a private company hired to house federal prisoners, the Court noted this aspect of the Carlson decision:

> In Carlson, we inferred a right of action against individual prison officials where the plaintiff's only alternative was a Federal Tort Claims Act (FTCA) claim against the United States. 446 U.S., at 18–23, 100 S. Ct. 1468. We reasoned that the threat of suit against the United States was insufficient to deter the

---

[3] 28 U.S.C. §§ 1346(b), 2671-2680.

> unconstitutional acts of individuals. Id., at 21, 100 S. Ct. 1468 ("Because the Bivens remedy is recoverable against individuals, it is a more effective deterrent than the FTCA remedy"). We also found it "crystal clear" that Congress intended the FTCA and Bivens to serve as "parallel" and "complementary" sources of liability. 446 U.S., at 19–20, 100 S. Ct. 1468.

Corr. Servs. Corp. v. Malesko 534 U.S. 61, 67-68 (2001).

Despite the fact that Mr. Maldonado asserted both constitutional and FTCA claims—a situation contemplated in Carlson—the court finds Carlson distinguishable. Although the Carlson court found FTCA immunity an important consideration, a federal employee's immunity is not absolute. The FTCA's protection has a narrow exception: the United States need not protect the pocketbook of an employee who was not acting within the scope of his employment when the allegedly tortious act occurred. 28 U.S.C. § 1346(b)(1).

Here the court held that Agent Martinson was not acting within the scope of his employment when he threw Mr. Maldonado to the ground, so he did not have immunity under the FTCA.[4] (See Dec. 4, 2018 Order & Mem. Decision Denying Westfall Pet., ECF No. 104.) That ruling opened the door to tort claims against Agent Martinson, at which point Mr. Maldonado amended his complaint to focus exclusively on Agent Martinson.[5] Because Agent Martinson may not substitute his employer as the defendant, Mr. Maldonado has an adequate alternative remedy for monetary damages. Accordingly, the court dismisses the Bivens claim.[6]

---

[4] The Tenth Circuit affirmed the decision in Maldonado-Pinedo v. United States of America, 814 Fed. App'x 338 (10th Cir. 2020).

[5] He re-asserted his Assault and Battery claim and added claims for intentional and negligent infliction of emotional distress. (See Second Am. Compl. at ¶¶ 57-77, ECF No. 141.) As discussed below, the court declines to adopt Agent Martinson's position that Mr. Maldonado may not assert the Assault and Battery claim now because he waived his right to bring it earlier in the litigation.

[6] Because the court has determined that Mr. Maldonado does not have a cause of action under Bivens, the question of qualified immunity is moot.

**<u>Waiver</u>**

According to Agent Martinson, Mr. Maldonado has waived his right to bring the assault and battery claim he alleges in his November 2020 Second Amended Complaint. Agent Martinson bases his argument on the parties' November 2015 jointly-filed Stipulated Clarification of Plaintiff's Causes of Action (ECF No. 45). The parties entered into that stipulation after Agent Martinson filed a motion to dismiss Mr. Maldonado's assault and battery claim.

In that initial motion to dismiss, Agent Martinson asserted that Mr. Maldonado had not stated an assault claim because Mr. Maldonado had simultaneously alleged that Agent Martinson was acting within the scope of his employment and so, as a matter of law, Agent Martinson was immune from state law tort claims. In other words, he argued that the FTCA provided the "exclusive remedy" for torts committed by a federal employee and "a plaintiff may not sue a government employee under a state law theory when that employee is acting in the scope of duty." (Def. Martinson's First Mot. to Dismiss at 4, ECF No. 35.) In September 2015, the court denied the motion to dismiss without prejudice because the court had not yet addressed the United States' resistance to Agent Martinson's Westfall petition for protection under the FTCA.

After the court denied Agent Martinson's 2015 motion to dismiss, Mr. Maldonado and Agent Martinson filed the November 2015 joint stipulation at issue now. In that pleading, Mr. Maldonado "clarifie[d] and … stipulate[d] that 1) Plaintiff is not alleging causes of action under Utah State law against Defendant Martinson for assault and/or battery; and 2) Plaintiff's claim(s) against Defendant Martinson is limited to an alleged constitutional violation." (Stipulated Clarification of Pl.'s Causes of Action at 2, ECF No. 45.)

Agent Martinson now argues that Mr. Maldonado's clarification and stipulation waived the right to re-assert the assault claim and that the Second Amended Complaint's timing justifies dismissal. He characterizes Mr. Maldonado's latest complaint as an "attempt to replead his discarded claim for assault and battery and to add completely new state law claims more than six years after the lawsuit was filed" that should "be rejected as being an untimely effort to assert new claims." (Def. Martinson's Mot. to Dismiss Second Am. Compl. at 17, ECF No. 147.) In response, Mr. Maldonado says he did not waive the claim and, even assuming he had, Agent Martinson's subsequent agreement to filing of the Second Amended Complaint allows him to bring it now.

The court finds that even if Mr. Maldonado waived his right to bring the assault claim, Agent Martinson's agreement to allow filing of the Second Amended Complaint invalidated any such waiver and foreclosed his new timeliness defense.

In November 2020, after the court denied Agent Martinson's Westfall petition and dismissed the United States, Mr. Maldonado filed a motion for leave to file a second amended complaint asserting claims only against Agent Martinson. Soon after that, Mr. Maldonado and Agent Martinson, instead of briefing the motion, submitted a Stipulation and Joint Motion to Allow Filing of Second Amendment Complaint and Delayed Response. In that joint filing, Agent Martinson said he did not oppose the motion and, in fact, stipulated and jointly moved the court to allow the filing of the proposed Second Amended Complaint. (See Stipulation and Joint Mot. to Allow Filing of Second Am. Compl. and Delayed Response ¶ 2, ECF No. 139 ("Defendant does not oppose the filing of that Second Amended Complaint and will stipulate and jointly move the Court to allow the filing of an amended complaint.").) The proposed Second

Amended Complaint asserted a claim for Assault and Battery as well as two other tort claims. (See Ex. A to Pl.'s Mot. for Leave to File Second Am. Compl. ¶¶ 57-65, ECF No. 137-1.)

Agent Martinson points out that he reserved "any defenses he may have or the filing of any responsive pleading that he believes appropriate and necessary." (Stipulation and Joint Motion to Allow Filing of Second Am. Compl. ¶ 3.) This reservation, he says, "includes defenses that he might have raised in opposition to a Rule 15(a)(2) motion to amend." (Mot. Dismiss Second Am. Compl. at 18.) He then suggests that although his motion to dismiss is "[t]echnically … not an opposition to a motion to amend filed under Rule 15 of the Federal Rules of Civil Procedure," he raises the defense that "belatedly pleading new claims only after the original or primary cause of action has been dismissed is generally impermissible" under Rule 15. (Id. at 17–18.) He also explains that he "stipulated to the filing of the Second Amended Complaint because at the time, the Parties had agreed to try and resolve the case through mediation and he did not want to expend additional resources in opposing said amendment if mediation was not successful." (Id. at 18 n.4.)

Those proffered reasons do not diminish the nature of the stipulation Agent Martinson signed. He may not acquiesce to filing a complaint containing the tort claims and simultaneously reserve the right to challenge the complaint simply because it contains the tort claims. His defense raising waiver and timeliness as a bar is contrary to the terms of the parties' agreement.

The court finds that the parties' joint motion to allow a complaint containing the tort claims nullified any waiver Mr. Maldonado may have executed in the earlier "clarification" and "stipulation" and any related right Agent Martinson attempts to assert now. Accordingly, the court will not dismiss the tort claims.

**Supplemental Jurisdiction**

Agent Martinson asserts that if the court dismisses the Bivens claim, it should decline to exercise supplemental jurisdiction. A court may decline to exercise supplemental jurisdiction if any of the following four circumstances exists: (1) the claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates over the federal claim; (3) the court has dismissed all of the claims over which it has original jurisdiction; or (4) "exceptional circumstances" providing "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Because the court has dismissed the Bivens action, over which it had original jurisdiction, only state law claims remain. Still, although the doctrine of supplemental jurisdiction is "a doctrine of discretion, not of plaintiff's right," United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966), exercising supplemental jurisdiction is appropriate here.

Justification of the supplemental jurisdiction doctrine "lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them, Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188." Gibbs, 383 U.S. at 726. The court finds all three considerations present.

Mr. Maldonado asserts that a refusal to keep the tort claims would "be grossly unfair and a stunning waste of judicial and Plaintiff's resources," for he "has expended considerable resources moving this case forward, served his initial disclosures, and even engaged in an unfruitful mediation." (Pl.'s Opp'n to Mot. Dismiss Second Am. Compl. at 15, ECF No. 151.)[7]

---

[7] Mr. Maldonado incorrectly asserts that a decision declining to exercise supplemental jurisdiction would prejudice him because the statute of limitations has expired for the state law claims and dismissal would leave him without a remedy. The supplemental jurisdiction statute expressly provides that the period of limitations for a pendent state law claim is "tolled while the claim is pending [in federal court] and for a period of [at least] 30 days after it is dismissed[.]" 28

He also notes that the court is very familiar with the parties, allegations, and causes of action given its handling of the substantial Westfall petition issues.

In response, Agent Martinson says that although the case has been pending for seven years, no significant discovery or litigation of Mr. Maldonado's claims has occurred because the case has focused on the Westfall petition. Although he recognizes that the parties have engaged in some discovery, he discounts that fact because the discovery "was limited to the issue of whether Martinson was acting within the scope of his employment at the time of the incident." (Reply in Support of Mot. Dismiss. Second Am. Compl. at 10, ECF No. 158.) He then lists substantial discovery he anticipates doing now that litigation is "just beginning." (Id. at 12.)

This case has a long history in this court. It has seen stays while the government contemplated criminal charges against Agent Martinson, multiple motions and a lengthy evidentiary hearing concerning the United States' decision to deny Agent Martinson petition for immunity under the Westfall Act, an appeal and affirmance of this court's decision denying that petition, and a stay for mediation.

The court is very familiar with the parties, Mr. Maldonado's claims, and the circumstances giving rise to those claims. Requiring another court to familiarize itself with this case would be inefficient. Moreover, Mr. Maldonado's state law claims do not present novel or complicated legal issues that would give rise to comity concerns.

Mr. Maldonado waited years for resolution of issues arising from Agent Martinson's Westfall petition. This case must move forward, and requiring Mr. Maldonado to refile in state

---

U.S.C. § 1367(d). See also Artis v. Dist. of Columbia, 138 S. Ct. 594, 598 (2018) ("We hold that § 1367(d)'s instruction to 'toll' a state limitations period means to hold it in abeyance, i.e., to stop the clock."). Accordingly, his state law claims are not time-barred and a decision declining supplemental jurisdiction would not prejudice him for that reason.

10

court would turn the clock back.  Frankly, that would prejudice both parties.  Accordingly, the court denies Agent Martinson's request that the court decline to exercise supplemental jurisdiction over Mr. Maldonado's state law claims.

## ORDER

For the foregoing reasons, Defendant Jon Martinson Jr.'s Motion to Dismiss the Second Amended Complaint (ECF No. 147) is granted in part and denied in part.  The court dismisses Mr. Maldonado's <u>Bivens</u> cause of action but retains supplemental jurisdiction over his state law tort claims.

DATED this 2nd day of November, 2021.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
U.S. District Court Judge